UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

PATRICK R. DUNNE and KATHLEEN M.
DUNNE, fka KATHLEEN M. LIND,

        Debtor.

Case No. DG 06-04435
Hon. Scott W. Dales
Chapter 7

_____/

KATHLEEN M. DUNNE,

        Plaintiff,

Adversary Proceeding
No. 07-80615

v.

RICHARD KEITH LIND,

        Defendant.

_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER TRIAL

This matter has its origins in the Kent County Circuit Court (the "State Court") which entered a Judgment of Divorce dissolving the marriage of Plaintiff Kathleen Dunne ("Debtor") and Defendant Richard Lind ("Defendant") on October 11, 1996. At issue is whether the Debtor incurred a non-dischargeable obligation to her former husband, the Defendant, to hold him harmless in the event that he paid a joint creditor on account of a certain bar review study loan.

I find that the Debtor implicitly incurred such an obligation in the course of the parties' divorce proceedings, and that the resulting debt to the Defendant is excepted from discharge under 11 U.S.C. § 523(a)(15). The following constitutes my findings of

fact and conclusions of law in accordance with Fed. R. Civ. P. 52 and Fed. R. Bankr. P. 7052.

## Analysis

To resolve the parties' relatively amicable divorce proceeding, the Debtor agreed to pay certain joint debts including a bar study loan (the "BSL"), even though the Defendant, as co-signer, was also obligated to the BSL creditor. In exchange, the Defendant agreed to assume other joint debt in roughly the same amount. The parties agreed that the Debtor would make no claim against the Defendant's pension, and the Defendant would make no claim to the fruits of the Debtor's juris doctor degree.

Many years after the divorce, Debtor filed a voluntary petition for relief under Chapter 7, and ceased paying the BSL debt. This prompted the BSL creditor, Sallie Mae, to seek payment from the Defendant as co-signer. Although Sallie Mae did not accelerate the BSL debt, and the Defendant could have presumably continued making the monthly installment payments, the Defendant voluntarily paid $8,762.74 to retire the BSL in full.

After making this payment, the Defendant asked the State Court to order the Debtor to repay him. In response, the Debtor filed a Notice of Removal, invoking the court's jurisdiction under 28 U.S.C. § 1452 to determine that the Defendant's claim against the Debtor was discharged when the court entered a discharge order on January 26, 2007.

Accordingly, the court has jurisdiction under 28 U.S.C. §§ 1334 and 1452. And, although the court gave the Defendant an opportunity to seek an order remanding this proceeding to the State Court, he did not file a remand motion. Thus, both parties have

consented to this court's exercise of jurisdiction to determine whether the Defendant's claim, in the nature of indemnification for retiring the BSL, is excepted from discharge. Under the circumstances, I have determined this adversary proceeding is within the court's core jurisdiction under 28 U.S.C. § 157(b)(2)(I).   Because neither party demanded a jury trial, I conducted a bench trial in Grand Rapids, Michigan, on November 17, 2008.

Under 11 U.S.C. § 523(a)(15), the Defendant's claim against the Debtor will be excepted from discharge if I determine that the corresponding debt is a debt:

(i)     to a former spouse,

(ii)    not of a kind described in § 523(a)(5), and

(iii)   incurred by the Debtor in the course of a divorce proceeding.

See 11 U.S.C. § 523(a)(15).  On the record, the parties agreed that the claim should be treated as arising prepetition, even though the Defendant paid Sallie Mae post-petition. I find that the Defendant's claim has its roots in the parties' prepetition Divorce Judgment, and that it qualifies as a "debt" under 11 U.S.C. § 101(12),[1] potentially within the scope of the Debtor's Chapter 7 discharge.  See 11 U.S.C. § 727(a). Based on the testimony of the parties, I also find that the Defendant is the Debtor's former spouse,

---

[1] A "debt" is a liability on a "claim," and both terms have precise meanings under the Bankruptcy Code. See 11 U.S.C. § 101(5) (defining "claim") & 101(12) (defining "debt"). In enacting this definition of "debt," Congress intended to adopt the broadest possible definition to ensure that the bankruptcy courts could provide debtors and creditors the broadest possible relief, consistent with the broad grant of bankruptcy jurisdiction under 28 U.S.C. §§ 1334 and 1452. Cohen v. de la Cruz, 523 U.S. 213 (1998); see also Johnson v. Home State Bank, 501 U.S. 78, 83 (1991) ("We have previously explained that Congress intended by this language [in § 101(5)] to adopt the broadest available definition of 'claim.' ").

and that the debt is not of a kind described in § 523(a)(5).[2] The only issue, therefore, is whether the Debtor "incurred" the debt in the course of the parties' divorce proceeding.

The Debtor contends that she incurred no obligation to the Defendant regarding the BSL because she merely acknowledged her original obligation to Sallie Mae and because the Divorce Judgment contains no "hold-harmless" clause. I would agree that the Divorce Judgment acknowledges the Debtor's pre-divorce debt to Sallie Mae, but I do not believe this acknowledgment warrants the conclusion that the parties intended no effect among themselves regarding this debt. Indeed, because Sallie Mae was not a party to the divorce proceeding, merely acknowledging the Debtor's obligation to that non-party in the context of the divorce makes little sense. Rather, it is more sensible to find that the Debtor's acknowledgment of the BSL debt had consequences for the estranged spouses -- the only parties to the State Court proceeding -- not their non-party creditor, Sallie Mae. The Debtor's interpretation renders the acknowledgment superfluous.

As for Debtor's argument premised on the absence of a hold-harmless clause, and the fact that the BSL provision did not expressly run in favor of the Defendant, the Sixth Circuit Bankruptcy Appellate Panel rejected that precise argument ten years ago in Gibson v. Gibson (In re Gibson), 219 B.R. 195 (6th Cir. BAP 1998). The Panel found that the debtor incurred an obligation to pay the joint debt; that the obligation was incurred in the divorce proceeding; and that the ex-spouse could, by enforcing the terms

---

[2] Neither party has suggested that the debt is in the nature of alimony or support, and certainly the Debtor would not seek such a determination as it would bring the debt within those excepted from discharge under 11 U.S.C. § 523(a)(5). See In re Williams, 2008 WL 3895538 (Bankr. N.D. Ohio 2008) (debtor agreed that the debt is not in the nature of support because, otherwise, the debt would be excepted from discharge under § 523(a)(5)).

of the Divorce Judgment, compel the debtor to honor the obligation -- even in the absence of a hold-harmless clause and even though the debt was payable to a third party. Id. at 205.

Having heard the testimony and reviewed the exhibits, I find that the parties intended to split their marital debts roughly "fifty-fifty." Specifically with respect to the BSL, Debtor agreed to make payments to Sallie Mae, and the State Court embodied this undertaking in the Divorce Judgment -- an enforceable order. The Debtor testified that she drafted the Divorce Judgment and the related agreements while she was a brand-new lawyer, untutored in domestic relations law. I find it unlikely, therefore, that the parties specifically bargained to exclude any hold-harmless language. It is more likely they intended a truly equitable division of debts and property. I infer that the Debtor, as a newly-minted attorney at the time she drafted the Divorce Judgment, did not think to bargain for such one-sided protection by specifically omitting any hold-harmless language. In addition, assuming that the Divorce Judgment (which incorporated the property settlement agreement) is susceptible to two competing interpretations, one of which renders the agreement unfair or unjust, I will adopt the construction that is reasonable and just -- here the Defendant's version which implies an obligation to hold each other harmless. Saab v. Farah, 2008 WL 4605920 (Mich. Ct. App. Oct. 2, 2008) (interpreting property settlement agreement and citing Siegel Co. v. Codd, 183 Mich. 145, 153 (1914)). Moreover, I am inclined to construe the Divorce Judgment and related agreements against the Debtor, under the rule of construction favoring the non-drafting party.

Given the parties' evident intent to split their debts and property down-the-middle, it is reasonable to infer, and I so find, that the parties intended to hold each other harmless if the other failed to pay the joint debts each agreed to satisfy. After considering the facts adduced at trial, I further find that the Debtor's agreement to be responsible for the BSL debt in the Divorce Judgment, though it did not absolve the Defendant from his duty to Sallie Mae, certainly implied a duty that, as between the Debtor and her ex-husband, she would pay this debt. I also find the Defendant could have enforced this duty in State Court, and the State Court implicitly retained jurisdiction to enforce the Divorce Judgment. See Rotzell v. Rotzell, 241 Mich. 122 (1927) (party to divorce decree entitled to enforce property transfer provisions). As such, implying the corresponding duty is necessary to effectuate the parties' intention. Saab v. Farah, 2008 WL 4605920 (Mich. Ct. App. Oct. 2, 2008) (applying contract interpretation principles to construe property settlement agreement); In re Auto Specialties Manufacturing Co., 18 F.3d 358, 361 (6th Cir. 1994) (goal of contract interpretation is to effectuate the intentions of the parties). Finally, Debtor's construction of the Divorce Judgment is inequitable, and therefore inconsistent with applicable nonbankruptcy law governing the "equitable distribution" scheme inherent in Michigan's domestic relations law. See Sparks v. Sparks, 440 Mich. 141, 151-52 (1992) (property division must be equitable).

As the Sixth Circuit Bankruptcy Appellate Panel held in language equally applicable to this case:

> [T]he Debtor's obligation to pay the Note, an obligation which is not of the kind described in § 523(a)(5), was incurred by the Debtor in connection with the Separation Agreement incorporated into the Dissolution Decree and therefore satisfies the qualifying language of § 523(a)(15), notwithstanding that the debt is payable

to a third party and the Separation Agreement lacks hold harmless or other indemnification language.

Gibson, 219 B.R. at 205.

The cases upon which Debtor principally relies, specifically McCracken v. LaRue (In re LaRue), 204 B.R. 531 (Bankr. E.D. Tenn. 1997), and Belcher v. Owens (In re Owens), 191 B.R. 669 (Bankr. E. D. Ky. 1996), were decided before, and without the benefit of the reasoning in, Gibson. I regard them as neither binding nor persuasive. In short, I find that the debt is excepted from discharge under 11 U.S.C. § 523(a)(15).[3]

One final point merits discussion.   At trial, the Debtor argued that the Defendant acted precipitously by paying the BSL in full even though Sallie Mae had not accelerated the debt, and that by so doing, the Defendant deprived the Debtor of the opportunity to discharge the student loan.  She suggested that, had Defendant not removed the BSL from the scope of her imminent adversary proceeding against Sallie Mae or its successors, she would have been successful in discharging the BSL as a hardship or perhaps by persuading the court that the BSL did not qualify as a "qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986 ..." See 11 U.S.C. § 523(a)(8).  Except in one respect, the argument is a red herring.

Premised on the lost opportunity to negotiate with Sallie Mae, the argument depends on the mistaken notion that bringing the BSL within the discharge notwithstanding § 523(a)(8) would have extinguished the obligation altogether. It would have no such effect.  I acknowledge that Debtor probably would have reached a

---

[3] Because I find that the Debtor incurred the obligation to indemnify the Defendant "in the course of a divorce," see 11 U.S.C. § 523(a)(15), I do not reach the Debtor's argument that the BSL does not qualify as an educational loan within the meaning of 11 U.S.C. § 523(a)(8).

7

compromise with Sallie Mae or its successors to discharge her obligations to pay the BSL. Based on her testimony about settling other Sallie Mae debts, I will presume that she would have been relieved of her obligation to pay Sallie Mae approximately one-half of the BSL, as that is the approximate rate of the discount she negotiated on other student loan debt.

Nevertheless, as a matter of law, a discharge does not extinguish the debt, but merely makes it unenforceable *as a personal liability of the debtor.* See 11 U.S.C. § 524(a)(2) (a discharge "operates as an injunction against the commencement or continuation of an action to collect, recover or offset any such debt as a personal liability of the debtor"). It remains enforceable, however, as a personal liability of the non-debtor, in this case the Defendant. This means Sallie Mae could have continued to pursue the Defendant notwithstanding the Debtor's discharge. Indeed, beneficiaries of guaranteed or co-signed debt frequently pursue their guarantors or co-signers after the principal obligors obtain their discharges. From the fact that Sallie Mae contacted the Defendant shortly after the Debtor ceased making payments in June, 2006, it is reasonable to infer that Sallie Mae would have pursued the Defendant for the non-discharged portion of the BSL. And, because I find that as between the Debtor and the Defendant, the Debtor was obligated to pay the BSL under the Divorce Judgment, whatever the Defendant would have paid to Sallie Mae he could have recovered from the Debtor. For these reasons, I conclude the Defendant's hasty payment of the BSL in full did not deprive the Debtor of the opportunity to discharge the BSL, and provides no basis for relieving her of the obligation she incurred in the course of the parties' divorce proceedings. It bears repeating that the debt at issue in this adversary

8

proceeding is the *Defendant's* independent right, incurred in the divorce proceeding, to enforce the Divorce Judgment so as to compel the Debtor to bear the burden of the BSL -- a burden that naturally followed the benefits of the law degree that she alone enjoyed after the entry of the Divorce Judgment she drafted.  The nature of the Debtor's debt to Sallie Mae, whether dischargeable as a hardship under § 523(a)(8) or dischargeable in full because it may not be a "qualified education loan," is irrelevant because, as between the Debtor and the Defendant, the obligation is excepted from discharge under 11 U.S.C. § 523(a)(15).

The argument premised on the Defendant's hasty payment to Sallie Mae has some traction in one respect.  If the Defendant had not paid the Debt, it is reasonable to assume that Sallie Mae would have permitted the Debtor to continue making installment payments, so long as she did not default.  The issue of payment terms, however, is not before me today, and is probably best resolved by the State Court.

### CONCLUSION

I find the debt the Debtor owes to the Defendant in relation to the BSL, in the amount of $8,762.74, is excepted from discharge under 11 U.S.C. § 523(a)(15).  I will enter a declaratory judgment to that effect in a separate document.

Dated this 2nd day of December, 2008
in Grand Rapids, Michigan

Scott W. Dales
United States Bankruptcy Judge

9